UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KATHERINE F., | ) |
| Plaintiff(s) | ) ) ) |
| vs. | ) ) Case No. 4:23-CV-1462 SRW |
| KILOLO KIJAKAZI,[1] Commissioner of Social Security Administration, | ) ) ) ) ) |
| Defendant(s). | ) ) |

## MEMORANDUM AND ORDER

This matter is before the Court on review of an adverse ruling by the Social Security Administration to terminate Plaintiff's Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Plaintiff filed a Brief in support of the Complaint. ECF No. 20. Defendant filed a Brief in Support of the Answer. ECF No. 21. The Court has reviewed the parties' briefs and the entire administrative record, including the transcripts and medical evidence. Based on the following, the Court will affirm the Commissioner's decision.

**I.   Factual and Procedural Background**

On February 7, 2008, Plaintiff Katherine F. protectively filed an application for DIB under Title II, 42 U.S.C. §§ 401, *et seq*. and SSI under Title XVI, 42 U.S.C. §§ 1381, *et seq*. Tr.

---

[1] At the time this case was filed, Kilolo Kijakazi was the Commissioner of Social Security. Martin J. O'Malley became the Commissioner of Social Security on December 20, 2023. When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party. Fed. R. Civ. P. 25(d). Later proceedings should be in the substituted party's name, and the Court may order substitution at any time. *Id*. The Court will order the Clerk of Court to substitute Martin J. O'Malley for Kilolo Kijakazi in this matter.

1

288-92. On March 31, 2008, Plaintiff's applications were approved with an alleged onset date of February 28, 2007. Tr. 17, 70, 134. Her disability was continued in a determination dated August 26, 2016. Tr. 17, 277-84. Upon a subsequent disability review, Plaintiff's benefits were discontinued due to health improvements as of January 6, 2021. Tr. 17, 103-04. This determination was upheld upon reconsideration. Tr. 131-44, 142-44.

On January 22, 2021, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 145. She appeared for an in-person hearing, with the assistance of counsel, on July 24, 2022. Tr. 34-65. Plaintiff testified concerning her disability, daily activities, and functional limitations. *Id*. During this hearing, the ALJ received testimony from vocational expert ("VE") Carma Mitchell. *Id*. On October 21, 2022, the ALJ issued an unfavorable decision finding Plaintiff not disabled. Tr. 14-33. Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. Tr. 285-87. On September 18, 2023, the Appeals Council denied Plaintiff's request for review. Tr. 1-6. Accordingly, the ALJ's decision stands as the Commissioner's final decision.

With regard to Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective statements of facts and responses. The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

## II.     Legal Standard for Continuing Disability Review

Eligibility for disability benefits under the Social Security Act ("Act") requires a claimant to demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Act defines disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months."

2

20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 1382c(a)(3)(B).

"Once an individual becomes entitled to disability benefits, his continued entitlement to benefits must be reviewed periodically." *Bennett v. Colvin*, 174 F.Supp.3d 1031, 1037 (E.D. Mo. 2016). *See* 42 U.S.C. § 423(f)(1); 20 C.F.R. §§ 404.1594, 416.994. The Commissioner may terminate benefits to a person previously adjudged to be disabled upon substantial evidence that the individual's condition has improved "to the point where he is able to perform substantial gainful activity." *Delph v. Astrue*, 538 F.3d 940, 945 (8th Cir. 2008). The regulations define "medical improvement" as:

> any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on improvement in the symptoms, signs, and/or laboratory findings associated with your impairment(s).

20 C.F.R. § 404.1594(b)(1). *See also* 20 C.F.R. § 416.994(b)(1)(i).

Under the regulations, the disability review process involves a sequential analysis of up to eight steps. *Delph*, 538 F.3d at 945. When deciding whether a claimant's disability has ceased, the Commissioner must determine:

> (1) whether the claimant is currently engaging in substantial gainful activity, (2) if not, whether the disability continues because the claimant's impairments meet or equal the severity of a listed impairment, (3) whether there has been a medical improvement, (4) if there has been medical improvement, whether it is related to the claimant's ability to work, (5) if there has been no medical improvement or if the medical improvement is not related to the claimant's ability to work, whether any exception to medical improvement applies, (6) if there is medical improvement and it is shown to be related to the claimant's ability to work, whether all of the claimant's current impairments in combination are severe, (7) if the current impairment or combination of impairments is severe, whether the claimant has the residual functional capacity to perform any of his past relevant

> work activity, and (8) if the claimant is unable to do work performed in the past, whether the claimant can perform other work.

*Dixon v. Barnhart*, 324 F.3d 997, 1000-01 (8th Cir. 2003) (citing 20 C.F.R. § 404.1594(f)). The "medical improvement" standard therefore "requires the Commissioner to compare a claimant's current condition with the condition existing at the time the claimant was found disabled and awarded benefits." *Delph*, 538 F.3d at 945.

**III.    The ALJ's Decision**

The ALJ considered the SSA's most recent favorable medical decision, dated August 26, 2016, which continued to find Plaintiff disabled. Tr. 19. This finding is known as the "comparison point decision" or CPD. *Id.* At the time of the CDP, Plaintiff had the following medically determinable impairments: "bipolar disorder, panic disorder and attention deficit-hyperactivity disorder (ADHD)." *Id.* The ALJ noted that Plaintiff's bipolar disorder was originally found to meet section 12.04C2 of 20 CFR Part 404, Subpart P, Appendix 1. *Id.* However, at the CDP, Plaintiff was no longer found to meet any listings, but her disability was continued based on no medical improvement. *Id.*

The ALJ found, through the date of his decision, Plaintiff had not engaged in substantial gainful activity. *Id.* He further determined the medical evidence established Plaintiff did not develop any additional impairments after the CDP through January 6, 2021. *Id.* And, since January 6, 2021, Plaintiff did not have an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. Tr. 19-21. The ALJ determined, however, that Plaintiff's mental impairments continued to be severe since January 6, 2021. *Id.* The ALJ found Plaintiff had the following RFC through the date last insured:

> [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: The

> [Plaintiff's] work is limited to simple and routine tasks. Her work should be in a low-stress job, defined as having only occasional changes in the work setting. She is unable to perform work that requires hourly quotas. She should have no interaction with the public. She should have only occasional interaction with co-workers and supervisors, with no tandem tasks.

Tr. 21-22.

The ALJ found Plaintiff had no past relevant work, was a younger individual age 18-49, and had at least a high school education. Tr. 25. The ALJ determined that transferability of job skills was not an issue. Tr. 26. Considering Plaintiff's age, education, work experience, and RFC, the ALJ indicated there were jobs that existed in significant numbers in the national economy that the Plaintiff could perform, including Laundry Worker (*Dictionary of Occupational Titles* ("*DOT*") No. 361.684-014, medium, with 30,000 jobs in the national economy); Machine Cleaner (*DOT* No. 699.687-014, medium, with 50,000 jobs in the national economy); and Industrial Cleaner (*DOT* No. 381.687-018, medium, with 170,000 jobs in the national economy). *Id.* The ALJ concluded Plaintiff's disability ended on January 6, 2021, and she has not become disabled again since that date. Tr. 27.

## IV.   Discussion

Plaintiff presents two assignments of error: (1) the ALJ improperly evaluated the medical opinions within the record; and (2) the RFC is conclusory and not supported by some medical evidence. ECF No. 20. In response, the Commissioner argues substantial evidence supported the ALJ's finding that medical improvement related to the Plaintiff's ability to work occurred on January 6, 2021. ECF No. 21.

### A.  Medical Opinions

#### 1. *Dr. Jennifer Brockman, M.D.*

Plaintiff argues the ALJ erred in affording the Mental Medical Source Statement ("MSS") and one-page letter from Plaintiff's treating psychiatrist, Dr. Jennifer Brockman,

5

"minimal weight." ECF No. 20 at 3-6. Plaintiff asserts the ALJ did not provide sufficient reasons for discounting these opinions. *Id.*

Dr. Brockman's MSS is dated July 12, 2022. Tr. 490-94. Dr. Brockman indicates she has been Plaintiff's psychiatrist since 2018 and has treated her for bipolar disorder, general anxiety disorder, and social anxiety. Tr. 494. Dr. Brockman opined that Plaintiff has marked limitations in initiating and completing tasks in a timely manner, ignoring or avoiding distractions, and sustaining ordinary routine and regular attendance, and would likely be 21-30% below average in overall pace of production during an 8-hour workday. Tr. 491. Dr. Brockman further indicated Plaintiff has marked limitations in functioning independently and regulating emotions in a work setting, and moderate limitations in using reason and judgment to make work related decisions, understanding and learning instructions and procedures, working a full day without needing more than the allotted number or length of rest periods, distinguishing between acceptable and unacceptable work performance, keeping social interactions free of excessive irritability, maintaining socially acceptable behavior, and responding appropriately to criticism and correction. Tr. 492. Because of these limitations, Dr. Brockman believed Plaintiff would be late when reporting for work or would need to leave early at least three times per month and would be absent from work at least three times per month. Tr. 493. She wrote that Plaintiff "could not consistently work a full-time job." Tr. 494.

On July 26, 2022, Dr. Brockman wrote a letter for submission to the Social Security Administration. Tr. 543. The letter states as follows in its entirety:

> [Plaintiff] has been a patient in this office since September 2018. While chronically struggling with anxiety and depression, her symptoms have recently been exacerbated following the birth of her second child. I have encouraged [Plaintiff] to continue with her use of medication, engagement in self-care, and utilization of support (from her family, the father of her child, community resources, etc.). In our most recent session, when we discussed her receiving poor rest and feeling overwhelmed, it was suggested that she consider exploring

> daytime childcare options. This would allow [Plaintiff] time to rest, complete household tasks, engage in positive treatment related activities (such as exercising, attending doctor appointments, therapy appointments, etc.), and engage with other adults/those in her community. Doing so, in my opinion, will benefit her mental health and help support her during this time of adjustment.

*Id.*

Within the determination, the ALJ summarized and considered Plaintiff's treatment history with Dr. Brockman. First, the ALJ took note of her three visits one year prior to her cessation of benefits. Tr. 23. On January 7, 2020, Plaintiff exhibited an unremarkable mental status examination as Dr. Brockman described Plaintiff as alert, oriented, pleasant, eurythmic, and congruent, with normal speech, logic, insight, and judgment. Tr. 23, 438. Plaintiff was "overall coping," finished school with B grades, left an abusive relationship, and went on a cruise. *Id.* She was advised to continue taking Adderall as directed and to follow up in 3 to 4 months. Tr. 438-42. On June 9, 2020, despite exhibiting an anxious mood and rapid speech, Plaintiff was described to be alert and pleasant with normal thought flow and intact memory. Tr. 23, 487. Dr. Brockman reported that she was "doing great in school" and "coping well despite stress" from child custody issues with her ex-partner. *Id.* On October 13, 2020, Plaintiff was described to be alert, pleasant, cooperative, and eurythmic, with normal speech, logical thought flow, good eye contact and normal insight and judgment. Tr. 23, 488. Her stress appeared to be mostly situational due to issues with her daughter's father. At all three visits, Plaintiff denied suicidal ideations or hallucinations.

The ALJ then summarized the treatment notes within the record written by Dr. Brockman after the cessation of benefits. Tr. 23-24. On February 25, 2021, a one-page note indicates Dr. Brockman's recommendation that Plaintiff "take off work beginning 2-25-21 through 3-4-21." Tr. 528. There is no explanation as to why that recommendation was made. Notably, Dr. Brockman could have checked the box for, "will likely never again be able to perform the

7

essential elements of this job," but chose to only limit her ability to work for a one-week duration. *Id.* During the visit, her prescriptions for Adderall were renewed. Tr. 529-30.

On May 11, 2021, Plaintiff had a telephone visit with Dr. Brockman. Tr. 23, 518. Plaintiff described the custody battle with her ex to be "hard." *Id.* The stress she described appeared to be situational. Plaintiff mentioned she was no longer working at Home Depot, but was trapping feral cats for a rescue service. *Id.* Dr. Brockman described Plaintiff to be alert and pleasant on the phone with congruent affect, logical thought flow, and normal insight and judgment. *Id.*

On August 31, 2021, Plaintiff called Dr. Brockman for another telephone appointment and reported "feeling she can focus on her life, school, etc." and that she had more stability since the custody battle over her daughter was almost complete. Tr. 23, 508. Dr. Brockman described her to be alert and pleasant with normal speech and in a eurythmic mood. She was directed to follow up in six months. *Id.*

On February 8, 2022, Dr. Brockman noted that Plaintiff was pregnant and due in June of 2022. Tr. 24, 505. Plaintiff expressed feeling depressed and stressed because her daughter's first year was "really tough." *Id.* She also reported that her mood and sleep were "off." Dr. Brockman described Plaintiff to be alert with good eye contact, normal speech, congruent effect, depressed, normal thought content, normal insight, and normal judgment. *Id.*

On July 12, 2022, Plaintiff appeared "tearful" with worsened symptoms. Tr. 24, 495. Plaintiff reported she tried to work at Target but had to quit after one day because she had a "severe anxiety attack." *Id.* At the appointment, despite observing Plaintiff to be in a depressed and anxious mood, Dr. Brockman described her to be alert, pleasant, and well-groomed, with good eye contact, a congruent affect, normal thought flow, intact memory, fair judgment and insight. *Id.* Dr. Brockman increased Plaintiff's Zoloft prescription and encouraged her to perform

8

activities of self-care. *Id.* The ALJ addressed Plaintiff's inability to work at Target by stating, "it is noted that her job responsibilities at Target exceeded the residual functional capacity detailed in this decision since she was required to deal with the public." Tr. 24.

After reviewing the records summarized above, the ALJ afforded minimal weight to Dr. Brockman's July 2022 MSS and letter for the following reasons:

> Her own treatment notes showed that while the claimant's mood was depressed and her insight and judgment were fair, she was observed to be pleasant and well-groomed, with good hygiene and eye contact, intact memory and a normal flow of thought. Dr. Brockman's overall conclusion that the claimant is unable to work consistently on a full-time basis is afforded no weight in this decision since the question as to whether an individual is disabled is reserved to the Commissioner of Social Security. Furthermore, there is no indication that the claimant exhibited symptoms consistent with the level of limitation suggested by Dr. Brockman, such as being up to 30% below average in her pace of production and that she would be absent, late or leave early three times per month or more. The overall impression given by the evidence is that medical improvement has occurred and the claimant is capable of simple, routine tasks in a low-stress environment free of hourly production quotas and not involving close interaction with others.

Tr. 25.

Plaintiff argues the ALJ did not adequately give good reasons for why he afforded Dr. Brockman's MSS and letter minimal weight. For claims filed before March 27, 2017, the regulations provide that if "a treating source's medical opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the Social Security Administration] will give it controlling weight." 20 C.F.R. § 404.1527. Under these regulations, the opinion of a treating physician is "normally entitled to great weight." *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018). "However, the Commissioner may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence," and the Commissioner "may also assign little weight to a treating physician's opinion when it is either

9

internally inconsistent or conclusory." *Id.* The regulations require that the ALJ give good reasons for the weight afforded to a treating physician's evaluation. *Reed v. Barnhart*, 399 F.3d 917, 921 (8th Cir. 2005); 20 C.F.R. § 404.1527(d)(2).

Here, the Court finds the ALJ did provide good reasons for attributing minimal weight to Dr. Brockman's opinions. As the Plaintiff acknowledges, there are five treatment notes from Dr. Brockman during the relevant period. *See* ECF No. 20 at 5. The ALJ explicitly outlined the five treatment records and acknowledged Plaintiff's treatment relationship and history with Dr. Brockman. Tr. 23-24. The ALJ determined these records did not support the marked functional limitations in Dr. Brockman's MSS and letter to the SSA because they documented routinely normal mental status examinations with stress and anxiety primarily related to the situational issues of a custody dispute, pregnancy, and a difficult ex-partner.

Significantly, as reflected in her own treatment records, Dr. Brockman never imposed any of the specific work-based limitations set out in her MSS. *See Toland v. Colvin*, 761 F.3d 931, 935-36 (8th Cir. 2014) (finding "ALJ had sufficient reason to discount" treating provider's opinion where he "included limitations in the MSS that are not reflected in any treatment notes or medical records") (quotation marks and citation omitted); *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012) (affirming ALJ's rejection of treating physician's opinions about plaintiff's exertional limitations that "[were] not reflected in any treatment notes or medical records."). As the ALJ indicated, nothing in the record supported the level of limitations suggested by Dr. Brockman. Tr. 25. *See Anderson v. Astrue*, 696 F.3d 790, 793-94 (8th Cir. 2012) (holding proper for an ALJ to discount a provider statement that "contained limitations that 'stand alone,' did not exist in the physician's treating notes, and were not corroborated through objective medical testing"). Notably, even though Dr. Brockman indicated she had limitations socializing, she still

10

advised Plaintiff to engage with other adults/those in her community as part of helpful therapy. Tr. 543.

Further, the ALJ properly disregarded Dr. Brockman's opinion that Plaintiff should not consistently work a full-time job because that is an opinion on an issue reserved for the Commissioner. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("treating physicians' opinions are not medical opinions that should be credited when they simply state that a claimant cannot be gainfully employed, because they are merely 'opinions on the application of the statute, a task assigned solely to the discretion of the [Commissioner]'") (quoting *Krogmeier v. Barnhart*, 294 F.3d 1019, 1023 (8th Cir. 2002)).

Viewing the ALJ's opinion in light of the record as a whole, substantial evidence supports the ALJ's decision to assign minimal weight to Dr. Brockman's opinions in the MSS. *See Cline v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014) (finding no error in decision to discount "cursory checklist statement" that "include[d] significant impairments and limitations that are absent from [provider's] treatment notes and [claimant's] medical records").

### 2. Drs. Keith Allen and Edd Bucklew

In a one sentence argument, Plaintiff claims the ALJ erred by applying "the wrong rule" when he evaluated the opinions of non-examining State agents, Dr. Keith Allen, Ph.D. and Dr. J. Edd Bucklew, Ph.D., because the ALJ used the words "unsupported and inconsistent." ECF No. 20 at 6.

In evaluating the opinions of Dr. Allen and Dr. Bucklew, the ALJ wrote the following in its entirety:

> As for the opinion evidence, Keith L. Allen, Ph.D., evaluated the claimant's medical history for the Agency in January 2020 at the initial determination. He found her to be only mildly limited in all four areas of work-related mental function and concluded that the mental impairments are non-severe. Dr. Allen's opinion is afforded no weight in this decision since it is inconsistent with and

11

> unsupported by the claimant's mental health history and her ongoing complaints of mental instability.
>
> J. Edd Bucklew, Ph.D., evaluated the claimant's medical history for the Agency in May 2020 on reconsideration determination. He concurred with Dr. Allen and found the claimant's mental impairments to be non-severe. Dr. Bucklew's opinion is afforded no weight in this decision since, as noted above, the claimant's mental health history supports a finding consistent with severe, but not debilitating mental impairments. A finding of non-severe mental impairments is unreasonable since it is unsupported and inconsistent with the claimant's long-standing mental instability and use of psychotropic medications to treat her symptoms. However, the record supports a finding that significant medical improvement has occurred, which is related to the claimant's ability to work for the reasons explained above.

Tr. 24-25 (internal citations omitted).

When reviewing claims filed before March 27, 2017, the regulations require the ALJ to explain in the decision the weight given to all opinions from treating sources, nontreating sources, and nonexamining sources. *See* 20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii). Here, the ALJ determined the opinions of Drs. Allen and Bucklew had "no weight" because they were unsupported and inconsistent with the record. Plaintiff appears to argue the ALJ used the wrong standard simply because the ALJ used the words "unsupported" and "inconsistent" in his analysis, which are the post-March 27, 2027 factors to be analyzed when evaluating medical opinions.[2]

The Court finds the ALJ did not err because he clearly articulated the weight given to Drs. Allen and Bucklew. Although supportability and consistency have been formally defined in the new post-March 2017 regulations, those terms were regularly used when analyzing weight under the previous regulations. *See, e.g.*, *Goff v. Barnhart,* 421 F.3d 785, 790-91 (8th Cir. 2005) ("an appropriate finding of inconsistency with other evidence alone is sufficient to discount the opinion"); *Houston v. Astrue*, 2012 WL 441154, at *8 (E.D. Mo. Feb. 10, 2012) (the ALJ

---

[2] The Social Security Administration, by regulation, altered how it considered and articulated medical opinions for all claims filed after March 27, 2017. 20 C.F.R. § 404-1520c. Under the new rules, adjudicators no longer give specific evidentiary weight or deference to any medical opinion, including a treating source opinion. 20 C.F.R. § 1520c(a). Instead, the Agency considers a list of factors and articulates how each medical opinion influenced its final decision. The factors include supportability and consistency. § 404.1520c(c)(1)-(5).

12

properly assigned opinion no weight to a medical opinion "as it was inconsistent with the objective evidence of record and not supported by clinical and laboratory findings"); *Varney v. Astrue*, 2011 WL 4445695, at *19 (E.D. Mo. Aug. 15, 2011), *report and recommendation adopted*, 2011 WL 4445656 (E.D. Mo. Sept. 26, 2011) (the ALJ properly assigned opinion no weight to a medical opinion as it was "inconsistent with the objective medical evidence of record and unsupported by the treating physician's subsequent mental status examinations").

Accordingly, the ALJ did not err by using the words "inconsistent" and "unsupported" when he determined the opinions of Drs. Allen and Bucklew should not be entitled to any weight.

### B.  RFC Evaluation

Plaintiff next argues the RFC determination is not supported by some medical evidence because the ALJ inappropriately "formed his own opinion based on his review and interpretation of the medical records and formed inferences as to how those findings, or lack of findings, would affect [P]laintiff's ability to function in the workplace." ECF No. 20 at 9. Plaintiff suggests the ALJ should have either ordered a consultative examination or asked Dr. Brockman for additional clarification as to the basis for her opined limitations. *Id.* Plaintiff also contends the ALJ incorrectly determined her self-reported level of independent function was inconsistent with a finding of disability.

Residual functional capacity or RFC is defined as that which a person remains able to do despite their limitations. 20 C.F.R. § 404.1545(a), *Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001). An ALJ must assess a claimant's RFC based upon all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of her symptoms and limitations. 20 C.F.R. § 404.1545(a); *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995); *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005).

13

A claimant's RFC is a medical question so there must be some medical evidence to support the ALJ's RFC determination. *Id.*; *Hutsell v. Massanari*, 259 F.3d 707, 711-12 (8th Cir. 2001); *Lauer*, 245 F.3d at 703-04; *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). An ALJ's RFC assessment which is not properly informed and supported by some medical evidence in the record cannot stand. *Hutsell*, 259 F.3d at 712. ALJs may not substitute their own opinions for those of medical professionals. *Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005). Even where claimants are represented by counsel, ALJs have the duty of fully and fairly developing the facts with regard to RFC. *Bowman v. Barnhart*, 310 F.3d 1080, 1085 (8th Cir. 2002).

According limited weight to opinion evidence does not necessarily render the record devoid of substantial evidence upon which an ALJ can base his decision. The limitation of opinion evidence does not undermine an ALJ's RFC determination where other medical evidence in the record supports the finding. *See Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007); *see also Zeiler v. Barnhart*, 384 F.3d 932, 936 (8th Cir. 2004) (lack of opinion evidence not fatal to RFC determination where ALJ properly considered available medical and testimonial evidence); *Sampson v. Apfel*, 165 F.3d 616 (8th Cir. 1999) (although ALJ discounted the only opinion evidence of record, a review of the entirety of the medical record provided substantial evidence on the record as a whole to support the ALJ's decision).

Here, the ALJ considered Dr. Brockman's opinions in her MSS and letter, but found her functional assessments to be inconsistent with her own examinations. As discussed above, the ALJ determined that while Dr. Brockman believed Plaintiff to have moderate to marked limitations in social functioning and skills required for employment, such severe deficiencies were not documented in her treatment notes. Rather, the ALJ reasoned that Plaintiff was "no more moderately limited in any area of work-related mental function based on her generally

14

normal mental status examinations[.]" Tr. 25. The ALJ further determined the opinions of Drs. Allen and Bucklew to have no weight because their assessments of Plaintiff's mental impairments as non-severe were not supported by her mental health history and ongoing complaints of mental instability.

The ALJ also properly considered Plaintiff's testimony and Function Report, and determined her own "self-reported level of independent function [was] inconsistent with a finding of disability and suggest[ed] that she is capable of performing simple, routine tasks in a low-stress working environment free of hourly quotas and without close interaction with others." Tr. 23. In making this statement, the ALJ referred to her December 2019 Function Report and summarized it as follows:

> [T]he claimant stated that she was living in a house with her daughter. She stated that she was spending her days caring for her young daughter and attending a college class twice weekly. She stated that she was also caring for a cat. Though she indicated that she lacked motivation at times, she cited no difficulty tending to her own personal grooming. She stated that she was preparing meals and performing chores weekly, such as cleaning and washing laundry. She reported the ability to drive and go out alone to get where she needed to go.

*Id.* at 22-23 (citing Tr. 322-32). Additionally, the ALJ noted Plaintiff was able to travel on a cruise, end an abusive relationship, and finish school with B grades. Tr. 22, 438. Notably, Dr. Brockman encouraged Plaintiff to engage with other adults/those in her community, which evidenced her treating providers belief that she could socialize. *See* Tr. 543.

Plaintiff argues the RFC is unsupported by any medical evidence because the ALJ gave no weight to the opinions of record. However, Plaintiff overlooks that the ALJ did, in fact, rely on treatment records for the relevant period and the year prior. The ALJ considered medical evidence showing predominantly normal mental status examinations and difficulties due mostly to situational concerns, including custody proceedings, issues with and ex-partner, and an unplanned pregnancy. Feelings of anxiety or depression which are generally tied to situational

15

factors do not support a finding of disability. *Moss v. Berryhill*, 2017 WL 2364407, at *8 (E.D. Mo. May 31, 2017) (citing *Tindell v. Barnhart*, 444 F.3d 1002, 1007 (8th Cir. 2005)). *See also Dunahoo v. Apfel*, 241 F.3d 1033, 1039-40 (8th Cir. 2001) (depression resulting from denial of food stamps and workers compensation was situational and not disabling); *Cook v. Berryhill*, 2017 WL 1132342, at *7 (E.D. Mo. March 27, 2017) (situational depression is not disabling); *Shipley v. Astrue*, 2010 WL 1687077, at *12 (E.D. Mo. April 26, 2010) (same).

As discussed above, on May 11, 2021, Dr. Brockman's mental status examination revealed Plaintiff to be alert, pleasant, logical, and congruent, with normal insight and judgment and intact memory. Tr. 518. Dr. Brockman explicitly attributed her increased stress to the custody issues she was dealing with at the time. *Id.* Three months later Plaintiff appeared for her routine three-month follow-up via telephone with the same normal mental status examination. Tr. 508. Plaintiff expressed feeling more stable. *Id.* Dr. Brockman recommended following up six months later. *Id.* In two later scheduled visits on February 8, 2022 and July 12, 2022, Plaintiff did express increased feelings of tearfulness, stress, and depressed mood; however, she had recently found out she was expecting a baby. Tr. 495, 505. Despite the anxiety over her pregnancy, Dr. Brockman described her to be "coping well." Tr. 495. None of the records within the relevant period reflect a need for emergency treatment or appointments outside of the routine three to six-month follow-up sessions.

Based on the credible medical and non-medical evidence of record, including Plaintiff's abilities to live alone, attend school, and care for her daughter, the ALJ accounted for Plaintiff's difficulties in social functioning and concentration, persistence, or pace, by limiting her to simple, routine, tasks in a low stress work environment free of hourly quotas, requiring no more than occasional interaction with supervisors and co-workers and involving no contact with the public. Because the RFC determination is based on the evidence in the record as a whole, the

absence of a consultative examination, does not require reversal or remand. Plaintiff bears the burden to prove her RFC, so her failure to provide medical evidence about work related restrictions should not be held against the ALJ where there is medical evidence that supports the ALJ's decision. *Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008). The medical evidence in this case was fully developed. The ALJ properly relied upon her mental status examinations in the only treatment notes related to her diagnoses during the relevant period and one year before, medications, and Plaintiff's testimony and Function Report in formulating the RFC determination. The ALJ's review of the medical record and conclusions are supported by the evidence in the record as a whole.

For the foregoing reasons, the Court finds that the ALJ's opinion is supported by substantial evidence on the record as a whole and contains no legal errors.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff Katherine F.'s Complaint is **DISMISSED, with prejudice**. A separate judgment will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that the Clerk of Court shall substitute Martin J. O'Malley for Kilolo Kijakazi in the court record of this case.

So Ordered this 29th day of October, 2024.

_____
STEPHEN R. WELBY
UNITED STATES MAGISTRATE JUDGE